# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| ERIN O'LEARY, | ) |
|     Plaintiff, | ) |
|     v. | ) |
| | ) CIVIL ACTION NO. _____ |
| IT CONCEPTS, INC., | ) |
|     Serve: | ) JURY TRIAL DEMAND |
|     URS Agents, LLC | ) |
|     Registered Agent | ) |
|     7288 Hanover Green Drive | ) |
|     Mechanicsville, VA 23111 | ) |
| and | ) |
| AMY JOHNSON, | ) |
|     Serve: | ) |
|     Amy Johnson | ) |
|     Chief Operating Officer | ) |
|     1600 Spring Hill Road | ) |
|     Suite 305 | ) |
|     Vienna, VA 22182 | ) |
| JOHN EPPERLY, | ) |
|     Serve: | ) |
|     John Epperly | ) |
|     President | ) |
|     1600 Spring Hill Road | ) |
|     Suite 305 | ) |
|     Vienna, VA 22182 | ) |
| and | ) |
| PINAKIN PATEL, | ) |
|     Serve: | ) |
|     Pinakin Patel | ) |
|     Chief Executive Officer | ) |

|  |  |
|---|---|
| 1600 Spring Hill Road | ) |
| Suite 305 | ) |
| Vienna, VA 22182 | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

# COMPLAINT

Plaintiff Erin O'Leary ("Ms. O'Leary," or "Plaintiff"), by counsel, and for her Complaint against IT Concepts, Inc., Amy Johnson, John Epperly, and Pinakin Patel (collectively, "Defendants"), alleges as follows:

## NATURE OF ACTION

1. This is an action for damages under the Uniformed Services Employment and Reemployment Rights Act of 1964, 38 U.S.C. § 4301 *et seq.* ("USERRA") and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII") stemming from Ms. O'Leary's former employment and termination from employment by IT Concepts, Inc.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this action asserts a deprivation of one or more federal constitutional or statutory rights under USERRA and Title VII, and under 28 U.S.C. §1343(a)(4), because Plaintiff seeks to secure relief under an Act of Congress that protects civil rights.

3. Subject matter jurisdiction is also conferred on this Court by 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a USERRA action brought against a private employer.

4.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 38 U.S.C. § 4323(c)(2). Defendants are private employers that maintain a place of business in the district of this United States District Court, and a substantial part of the events giving rise to the claims in this action occurred in this district.

## PARTIES

5.	Ms. O'Leary is domiciled in the Commonwealth of Virginia and resides in Arlington, Virginia.

6.	Ms. O'Leary is a member of the Air Force Reserve Command. Ms. O'Leary has been deployed on two occasions: once in support of Operation Iraqi Freedom and once in support of Operation Enduring Freedom.

7.	Ms. O'Leary has received five (5) Commendation Medals for distinguished meritorious achievement and service. She has received four (4) Distinguished Graduate Awards and won the Airman of the Year Award at multiple levels, including Unit Level, Wing (Base) Level, and Numbered Air Force Level. Ms. O'Leary has received a rating of 5 out of 5 on all yearly performance reports throughout her military career.

8.	Defendant IT Concepts, Inc. ("ITC") is a company registered to conduct business in the Commonwealth of Virginia.

9.	ITC provides end-to-end information technology engineering and business consulting services for the private and government sectors.

10.	Defendant Amy Johnson ("Johnson") is, and at all times relevant to this Complaint was, the Chief Operating Officer of ITC.

11.	Defendant Pinakin Patel ("Patel") is, and at all times relevant to this Complaint was, the Chief Executive Officer of ITC.

12. Defendant John Epperly ("Epperly") is, and at all times relevant to this Complaint was, the President of ITC.

13. ITC, Johnson, Patel, and Epperly were, at all times relevant to this Complaint, "employers" of Ms. O'Leary within the meaning of USERRA, 38 U.S.C. § 4304(4).

14. Johnson, Patel, and Epperly each had decision-making authority and held the power to hire and fire employees on behalf of ITC.

15. Johnson, Patel, and Epperly maintained control over Ms. O'Leary's employment opportunities at ITC.

16. Ms. O'Leary was an "employee" of ITC within the meaning of 42 U.S.C. § 2000e(f).

17. ITC is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

18. ITC is engaged in an industry affecting commerce and, on information and belief, had greater than fifteen employees during the relevant time periods in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

19. For the purposes of 38 U.S.C. § 4304(4), each Defendant is a private employer.

**FACTS**

20. Ms. O'Leary began her employment as a Senior Consultant at ITC in April 2019.

21. Shortly into her employment with ITC, Ms. O'Leary's role expanded to Senior Executive Level Consultant and Program Manager ("PM").

22. Ms. O'Leary's position entailed the supervision of six ITC contractors.

23. Ms. O'Leary performed her work under the direct supervision of ITC Account Manager Timothy Larson ("Larson").

24. Johnson, Patel, and Epperly served as Ms. O'Leary's second-level supervisors.

*Notification of Deployment*

25. In May 2019, Ms. O'Leary verbally informed Larson that she had been tasked to deploy from October 2019 until April 2020. With the addition of pre- and post- deployment training, Ms. O'Leary expected her absence from work would begin in September 2019 and end in May 2020.

26. In the months that followed, Larson and Ms. O'Leary informally discussed plans for an interim replacement to fill Ms. O'Leary's position during her deployment.

27. On or about August 7, 2019, Ms. O'Leary received an official Memorandum ("Memorandum") from her Unit Deployment Manager regarding her upcoming deployment. The Memorandum described the expected duration of Ms. O'Leary's deployment but did not constitute her formal order to deploy.

28. Ms. O'Leary emailed a copy of this memorandum to Human Resources Director Tom Swerdzewski ("Swerdzewski") and Larson that same day.

29. On August 23, 2019, Ms. O'Leary received a call from her Unit Deployment Manager informally notifying her that her pre-deployment training would likely begin on September 8, 2019.

30. Ms. O'Leary communicated this information to Larson via text message.

31. On September 5, 2019, Ms. O'Leary learned that Jacqueline McClendon ("McClendon") would be taking over her position as Interim Contract Site Lead during Ms. O'Leary's absence.

32. On or about September 7, 2019, Ms. O'Leary learned from her Unit Commander that her pre-deployment had been delayed until the end of September 2019.

33. Ms. O'Leary immediately informed Larson of the delay and stated her desire to continue to work past her original deployment date. Larson approved her request to continue working until September 29, 2019, to telework the week of September 16, 2019, and to take leave using paid time off during the week of September 23, 2019.

34. On or about September 12, 2019, McClendon began working in the position of Interim Contract Site Lead at ITC.

35. On or about September 16, 2019, Ms. O'Leary received a phone call from Larson, who had become frustrated that Ms. O'Leary's deployment orders had not yet been finalized. Larson sounded openly hostile on this call. He complained about having to pay two people for the same position and expressed concern about looking disorganized in front of the government client.

36. On this call, Ms. O'Leary learned Larson had not simply backfilled her position on an interim basis, but instead had permanently hired McClendon into her position. Specifically, she learned the contract for McClendon's former position with ITC had ended, and McClendon could not return to her former position pending Ms. O'Leary's deployment.

37. As ITC backfilled Ms. O'Leary's position with a permanent hire, it is clear ITC did not intend to reemploy Ms. O'Leary following her deployment.

38. Larson told Ms. O'Leary during this call that if she did not produce orders, she may no longer have a job at ITC.

39. Ms. O'Leary had no control over her deployment orders and was transmitting updates to Larson as soon as she received them from her Unit Deployment Manager.

40. On September 18, 2019, Ms. O'Leary, having still not received her deployment papers, checked in again with her Unit Commander who informed Ms. O'Leary she would be expected to report to her unit on October 1, 2019.

41. Ms. O'Leary immediately informed Larson of this update regarding her deployment and the expectation she would receive formal orders for deployment within the next two weeks.

42. Ms. O'Leary worked remotely, as planned and previously approved by Larson, on September 19, 2019 and September 20, 2019.

43. Ms. O'Leary began her pre-deployment paid time off, as planned and previously approved by Larson, on September 23, 2019. Ms. O'Leary's paid time off ended on Friday, September 27, 2019.

44. On that date, having still not received formal orders, Ms. O'Leary reached out to her Unit Commander who promised Ms. O'Leary she would receive final word and formal orders regarding her deployment on Monday, September 30, 2019.

45. Ms. O'Leary immediately informed Johnson of the continued delay.

46. Ms. O'Leary and Johnson discussed Ms. O'Leary returning to the office on Monday, September 30, 2019 to assist with the training of McClendon in her position.

47. Ms. O'Leary did not hear from her Unit Commander until approximately 7:00am on Tuesday, October 1, 2019. At that time, Ms. O'Leary's Unit Commander informed her that her deployment had been cancelled.

48. Ms. O'Leary immediately notified Johnson her deployment had been cancelled, and informed Johnson she was ready and available to return to work.

49. Johnson responded to Ms. O'Leary via email on October 1, 2019 and instructed Ms. O'Leary not to inform the government client that her deployment had been cancelled. She further instructed Ms. O'Leary to report to ITC headquarters rather than the client site the following day.

50. On October 1, 2019, Johnson reached out to the government client to discuss a "plan of action" for Ms. O'Leary's employment based on the knowledge Ms. O'Leary was no longer being deployed.

51. During this meeting, Johnson decided to terminate Ms. O'Leary's employment.

52. On October 2, 2019, Ms. O'Leary met with Johnson at ITC's headquarters, as directed. Johnson telephoned Swerdzewski in Human Resources and then terminated Ms. O'Leary's employment while Swerdzewski remained on the phone.

53. Johnson apologized to Ms. O'Leary for having had to terminate her, but told her that due to "new team dynamics" it would not be possible for Ms. O'Leary to return to her position.

*Ms. O'Leary Opposes Sexual Harassment of Kristin Cunningham*

54. The following events occurred contemporaneously with the events described above.

55. On August 2, 2019, Ms. O'Leary witnessed an ITC contractor on her team, Moriah Mensah ("Mensah") sexually harass and assault another ITC contractor, Kristin Cunningham ("Cunningham"), during a company-sponsored happy hour event in Arlington, Virginia.

56. In addition to Ms. O'Leary, Mensah, and Cunningham; Johnson, Larson, Patel, and four additional ITC contractors were present at the event.

57. Ms. O'Leary witnessed Mensah aggressively rubbing Cunningham's shoulders and back, leaning up against Cunningham, and touching Cunningham in a manner which caused Cunningham visible and obvious discomfort.

58. Mensah maintained close physical proximity to Cunningham despite Cunningham telling her to stop on more than one occasion, and despite Cunningham's efforts to put physical distance between Mensah and herself.

59. Ms. Cunningham approached Ms. O'Leary while Ms. O'Leary was engaged in a conversation with Johnson. Cunningham told Ms. O'Leary, privately, that Mensah had been sexually harassing her throughout the night and had assaulted her in the ladies restroom.

60. Mensah continued to rub and touch Cunningham after Cunningham described her need for help to Ms. O'Leary.

61. Ms. O'Leary called Mensah an Uber in an effort to separate Mensah from Cunningham. Ms. O'Leary informed Johnson of her intent to send Mensah home due to Mensah's intoxication and persistent harassment of Cunningham.

62. When Ms. O'Leary placed Mensah in the Uber, Mensah loudly stated something to the effect of "I guess I won't be getting any pussy tonight."

63. Ms. O'Leary's husband drove Ms. O'Leary and Cunningham home from the event.

64. During the drive, Mensah continued to send Cunningham inappropriate text messages, including the following messages, repeated verbatim as sent:

    a. "All the time I wanna kiss you."

    b. "I did nt jnow what to do."

    c. "I feel you in mu bones."

      d.   "I wish you wouldn't dend me awau."

65. Ms. O'Leary immediately noticed a change in the work environment and an increase in tension as Mensah and Cunningham continued to work in close proximity to one another at the office.

66. Cunningham informed Ms. O'Leary she felt uncomfortable working with Mensah following the incident.

67. Ms. O'Leary called Larson to share Cunningham's concerns.

68. Human Resources Director Thomas Swerdzewski ("Swerdzewski") called Ms. O'Leary several days later to interview her about the incident of harassment by Mensah.

69. Ms. O'Leary called Larson on or about August 14, 2019 and requested an update on the investigation of the incident, which Larson was unable to provide.

70. The work environment remained tense, and, on or about August 21, 2019, Ms. O'Leary emailed Swerdzewski again to request an update.

71. On or about August 28, 2019, Ms. O'Leary learned that Mensah would be placed on administrative leave without pay for a period of one work week and would be required to undergo harassment training before returning to work.

72. ITC ultimately placed Mensah on administrative leave for a period of only two workdays.

73. Mensah was placed on administrative leave beginning on Labor Day, Monday September 2, 2019, while ITC was closed for the holiday.

74. Mensah returned to work on Thursday, September 5, 2019.

75. On information and belief, ITC permitted Mensah to return to work without having completed the harassment training she had been assigned.

76. Mensah returned to work with the team including Ms. O'Leary and Cunningham.

77. On or about September 12, 2019, Ms. O'Leary, Cunningham, and Mensah attended a meeting with Patel, Johnson, Swerdzewski, and Epperly at the company's headquarters in Vienna, Virginia.

78. At this meeting, Patel chastised Ms. O'Leary, Cunningham, and Mensah for what he referred to as "high school drama."

79. Epperly threatened to fire Ms. O'Leary, Cunningham, and Mensah if they could not find a way to work together, even though Cunningham and Ms. O'Leary had not engaged in any harassing behavior and had engaged in protected activity by opposing Mensah's harassment.

80. When Cunningham became upset by the threat to her employment and began to cry, Epperly informed her he would "sleep like a baby" if and when Cunningham, Mensah, and Ms. O'Leary were fired.

81. ITC terminated Ms. O'Leary's employment on October 2, 2019, approximately two weeks after this meeting.

82. ITC claimed Ms. O'Leary was being terminated due to "new team dynamics."

*Exhaustion of Administrative Remedies*

83. On January 8, 2020, Ms. O'Leary timely filed a charge of discrimination based on retaliation with the United States Equal Opportunity Commission ("EEOC").

84. The EEOC issued Ms. O'Leary a Notice of Right to Sue in this matter on August 19, 2020.

85. Plaintiff has exhausted her administrative remedies as required by 42 U.S.C. § 2000(e), *et seq*.

86. This matter is timely filed within ninety (90) days of Plaintiff's receipt of her Notice of Right to Sue from the EEOC.

## COUNT I
### USERRA Violation (38 U.S.C. § 4311(a))
### Discrimination
### *Against All Defendants*

87. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

88. As an employee of Defendants, Plaintiff was entitled to the protections of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4311 ("Section 4311"), which prohibits discrimination against an individual on the basis of their military service.

89. Ms. O'Leary's obligation to perform service in the uniformed service was a motivating factor in Defendants decision to terminate Ms. O'Leary's employment.

90. Defendants unlawfully discriminated against Ms. O'Leary by denying Ms. O'Leary employment and benefits of employment on the basis of her membership, service, or obligation to perform service in the uniformed service, a right provided by USERRA.

91. Johnson, Epperly, and Patel had control over Ms. O'Leary's employment opportunities at ITC, and are personally liable as Ms. O'Leary's employers under USERRA.

92. As a further direct and legal result of Defendants' conduct, by and through the conduct of its agent(s), Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

93. Defendants' actions directly and proximately caused all injuries and damages sought herein.

94. Defendants' conduct was willful, as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c). Defendants employ a number of service members and chose to recklessly disregard known and commonly applied policies and rights under USERRA.

95. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, liquidated damages, litigation costs, and her reasonable attorneys' fees.

## COUNT II
### USERRA Violation (38 U.S.C. § 4311(c))
### Discrimination/Retaliation
### *Against All Defendants*

96. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

97. Plaintiff engaged in protected activity when she attempted to exercise her right to job-protected leave under USERRA.

98. Defendants' actions caused the violation of Ms. O'Leary's USERRA rights such that Ms. O'Leary's action to enforce a protection afforded her under USERRA, or to exercise a right provided by USERRA, was a motivating factor in Defendants' decision to deny Ms. O'Leary employment and the benefits of employment.

99. Defendants unlawfully retaliated against Ms. O'Leary, among other ways, by denying Ms. O'Leary employment and denying her benefits of employment because she took action to enforce a protection afforded to her by USERRA or to exercise a right provided by USERRA such as her right to job-protected leave for the purpose of military service.

100. At all times relevant to this action, Plaintiff met or exceeded expectations for her job requirements at ITC.

101. On the basis of Plaintiff's request for job-protected pursuant to her rights under USERRA, Defendants willfully took adverse action against Plaintiff by terminating her employment.

102. Defendants would not have terminated Plaintiff's employment but for her USERRA-protected activity.

103. Johnson, Epperly, and Patel had control over Ms. O'Leary's employment opportunities at ITC, and are personally liable as Ms. O'Leary's employers under USERRA.

104. As a further direct and legal result of Defendants' conduct, by and through the conduct of its agent(s), Plaintiff has been caused to suffer, and did suffer from, injuries, including but not limited to, lost wages, emotional and mental distress, anguish, embarrassment, and humiliation.

105. Defendants' actions directly and proximately caused all injuries and damages sought herein.

106. Defendants' conduct was willful, as defined by 38 U.S.C. § 4323(d), 20 C.F.R. § 1002.312(c). Defendants employ a number of service members and chose to recklessly disregard known and commonly applied policies and rights under USERRA.

107. As a result, Plaintiff is entitled to an award of compensatory damages, plus interest, liquidated damages, litigation costs, and her reasonable attorneys' fees.

### COUNT III
### Retaliation Under Title VII (42 U.S.C. § 2000 *et seq.*)
### Unlawful Retaliation for Engaging in Protected Activity
*Against Defendant ITC Concepts, Inc.*

108. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

109. Title VII prohibits retaliation for engaging in protected activity; in pertinent part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of her employees or applicants for employment . . . because she has opposed any practice made an unlawful employment practice by this subchapter, or because she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

110. Ms. O'Leary engaged in protected activity by assisting and supporting Cunningham in her complaint of sexual harassment against Mensah.

111. Ms. O'Leary's opposition to sexual harassment during the sexual harassment investigation was reasonable and carried out in good faith, as Ms. O'Leary directly witnessed the sexual harassment.

112. ITC terminated Ms. O'Leary's employment on October 2, 2019.

113. ITC did not have a legitimate, non-discriminatory and/or non-retaliatory reason to terminate Ms. O'Leary's employment.

114. ITC only told Ms. O'Leary that she could not return to her position due to "new team dynamics."

115. At no point prior to October 2, 2019 did ITC inform Ms. O'Leary that she was displaying undesirable behavior or performing in a deficient or unprofessional manner.

116. In a performance evaluation completed for Ms. O'Leary by Larson on or about August 6, 2019, Larson wrote that Ms. O'Leary was "meeting all of the requirements and the customer is very satisfied with her performance."

117. This conduct by ITC was actuated by malice, spite, and ill will; was willful and wanton, and evinced a conscious disregard for the rights of Ms. O'Leary. As such, Ms. O'Leary is entitled to punitive damages.

118. As a direct and proximate result of the acts and conduct of ITC as alleged herein, Ms. O'Leary has suffered loss of earnings and related employment benefits in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, it is respectfully prayed that this Court grant Plaintiff Erin O'Leary compensatory damages, plus past and future pecuniary or economic damages, liquidated damages, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs, and any and all other relief the Court deems just and proper.

## JURY DEMAND

**PLAINTIFF ERIN O'LEARY DEMANDS A TRIAL BY JURY.**

Dated:   November 16, 2020          Respectfully,

                                    /s/
                                    Joshua Erlich, VA Bar No. 81298
                                    Davia Craumer, VA Bar No. 87426
                                    Katherine L. Herrmann, VA Bar No. 83203
                                    THE ERLICH LAW OFFICE, PLLC
                                    2111 Wilson Blvd., Ste. 700
                                    Arlington, VA  22201
                                    Tel:   (703) 791-9087
                                    Fax:   (703) 722-8114
                                    Email: jerlich@erlichlawoffice.com
                                           dcraumer@erlichlawoffice.com
                                           kherrmann@erlichlawoffice.com